THE STATE BANK OF THE CITY OF NEW YORK *vs.* CHARLES R. WATERHOUSE, JR.

Third Judicial District, Bridgeport, Oct. Term, 1897. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The indorsement and delivery of a warehouse receipt transfers the legal title and the constructive possession of the property to the indorsee.
Whether our statute (General Statutes, § 3971) gives to such receipts all the characteristics of negotiable paper, *quære.*
An agreement between a former owner and the warehouseman, that the goods should remain in the warehouse until the purchase price had been paid, cannot affect a subsequent *bona fide* indorsee without notice.
A warehouse receipt provided that certain barrels of whiskey were to be

State Bank, etc., *v.* Waterhouse, Jr.

delivered upon surrender of the receipt, after the payment of the government tax "and all other amounts due." *Held* that the words quoted referred only to proper warehouse charges, and therefore gave no constructive notice to the indorsee that any lien existed in favor of a former owner for the purchase price of the whiskey.

In the case at bar the warehouseman having paid the government tax upon the whiskey, issued his receipt for the goods with the words "tax paid" stamped thereon. *Held* that as against the plaintiff, an indorsee without notice, the warehouseman was estopped from claiming a lien for the amount of the tax so paid.

Statements claimed to have been made by a bank president concerning the dealings between a firm, in which he was a partner, and an insolvent debtor, are irrelevant upon an inquiry as to the relation which the bank sustained to such insolvent and to his property.

A letter of the plaintiff directing a certain person to make demand upon the defendant for property about to be replevied, is admissible upon the part of the plaintiff to show the agent's authority.

[Argued October 27th—decided November 30th, 1897.]

ACTION of replevin to recover twenty barrels of whiskey, brought to the Superior Court in New Haven County and tried to the court, *Thayer J. ;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The finding of facts is as follows: "2. On August 23d, 1894, the United Growers Company, a corporation organized and existing under the laws of the State of New York, and located and doing business in the city of New York, sold to one J. Librovicz, of said city and State of New York, the twenty barrels of whiskey described in the complaint, and gave him a receipted invoice or bill thereof, Exhibit E, and delivered to him the three warehouse receipts, Exhibits A,* B,

---

*EXHIBIT A.

THE OLD COLONY DISTILLERIES COMPANY.

No.  Bbls. 5.

NEW HAVEN, August 23d, 1894.

Received in our Distillery Bonded Warehouse at New Haven, District No. 2, State of Connecticut, five bbls. Mill River Rye Why., Serial Nos. 9547 to 9551, which were deposited in said warehouse on the day of May, 1891, to be delivered to J. Librovicz after the payment of the United States internal revenue tax and all other amounts due, and the surrender to us of this warehouse receipt. Tax paid, B. H.

and C and received from him, in payment for said whiskey, the acceptances of said Librovicz for the agreed price and full market value of said whiskey. 3. Said whiskey was manufactured by the Old Colony Distilleries Company, a Connecticut corporation located in New Haven, and prior to said 23d day of August, 1894, had been stored in their distillery warehouse in New Haven. 4. On said day, the time within which the United States internal revenue tax must be paid, according to the condition of said Distilleries Company's bond, having expired, the defendant, who was then the treasurer and general manager of said company, paid said government tax, and said whiskey was thereupon removed from the bonded or distillery warehouse to a public warehouse which said Distilleries Company was then conducting in the same building, in compliance with the laws of this State relating to public warehouses, where it remained until this action was commenced. 5. On said 23d day of August the defendant, acting in behalf of said Distilleries Company, at the request of the United Growers Company, who had become the owners of said whiskey, filled out said warehouse receipts, Exhibits A, B and C, stamped the same with the word 'tax paid,' and delivered the same to said Growers Company. 6. After said warehouse receipts had been delivered by said Growers Company to said Librovicz, as stated in paragraph 2 hereof, said Librovicz indorsed the same in blank and delivered the same to the plaintiff, as part collateral security for a note of $2,000, dated August 29th, 1894, which

The property mentioned in this receipt is held by us as Bailees only and is not insured by us. This receipt is transferable or negotiable by delivery. Storage to be paid at the rate of eight cents per bbl. per month.      THE OLD COLONY DISTILLERIES CO., per CHAS. R. WATERHOUSE, Jr., Treas.

(Indorsement).

Deliver M. Zunder & Son, or order.

JULIUS LIBROVICZ.

[Exhibits B and C were like Exhibit A, except that they were for barrels with different numbers. Exhibit D is unimportant. Exhibit E was a receipted bill of sale to J. Librovicz, from the United Growers Company, of all the goods replevied.]

the bank on that day discounted for him, the proceeds of which he had, and no part of which has ever been paid. 7. On January 22d, 1895, said Librovicz having become insolvent and having absconded, the plaintiff wrote above the indorsement of said Librovicz on said warehouse receipts, the words, ' Deliver M. Zunder & Sons, or order,' and sent said certificates to said Zunder & Sons at New Haven, with directions to withdraw said whiskey from the warehouse, pay storage charges, and ship the whiskey to the plaintiff in New York. 8. Upon the receipt of said warehouse receipts and instructions, Mr. M. Zunder, of the firm of Zunder & Sons, called at said warehouse in behalf of the plaintiff and demanded the delivery of said twenty barrels of whiskey, at the same time showing the defendant the said receipts, and tendering and offering to deliver the same to him and to pay all storage charges on said whiskey. The defendant refused to deliver said whiskey until he should be paid the sum of $900, which he claimed he had paid for taxes to the U. S. government on said whiskey, and until he should be paid, also, the amount which said Librovicz agreed to pay said Growers Company on said whiskey. 9. Said Librovicz never paid said acceptances to said Growers Company, and said company, after the same became due, brought suits against said Librovicz in the City Court of the city of New York, and in January, 1895, obtained judgments against him in said court for the full amount due on said acceptances. 10. Said Growers Company also brought an action against said Librovicz upon the common counts, returnable to the City Court of the city of New Haven, on the first Monday of December, 1894, in which action the Old Colony Distilleries Company was made garnishee, and service of a copy of the writ and complaint in said action was made upon this defendant. No appearance was entered in said action in behalf of defendant or garnishee, no bill of particulars, answer, or other pleadings, were ever filed in said cause, and the said cause now appears upon the docket of said court as still pending therein. 11. Upon the trial the plaintiff called as a witness one J. J. Kennedy, the stamp deputy for the internal revenue collector at the city of

New Haven, who testified in chief that August 23d, 1894, the defendant called at said collector's office and paid the government tax on the twenty barrels of whiskey in question. Upon cross-examination he was asked the following question: 'Q. And as soon as the tax was paid Mr. Waterhouse removed it, didn't he?' (referring to the removal of the whiskey from the bonded warehouse to the public warehouse). To this question counsel for the plaintiff objected, on the ground that it was irrelevant, immaterial, and foreign to the examination in chief. The objection was sustained. The defendant's counsel duly excepted. 12. The plaintiff offered one Oscar L. Richard, its president, as a witness, who testified that the letter hereto annexed as Exhibit D, was written with his knowledge and by his direction, by J. H. Rosenbaum, cashier of said bank, but now dead; and the plaintiff then offered said letter in evidence, stating that it would be shown by other witnesses that said warehouse receipts were inclosed with said letter and sent to and received by M. Zunder & Sons with said letter. The defendant's counsel objected to the introduction of said letter, as irrelevant, immaterial, and *res inter alios*. The objection was overruled, and an exception duly taken to the ruling by the defendant. The plaintiff afterwards, by Allan Durand, assistant cashier of the plaintiff bank, and by M. Zunder, proved that said letter was sent to Zunder & Sons and received by them, and that the receipts, Exhibits A, B and C, were inclosed with the letter when so sent and received. 13. Said Richard testified in chief to the negotiations which took place between himself as the representative of the plaintiff, and said Librovicz, concerning the loan of August 29th, 1894, above referred to, and the giving of said collateral. Upon cross-examination the witness (who it appeared was a member of the firm of Richard & Company doing a banking and forwarding business, which firm was a creditor of said Librovicz) was asked whether he attended a meeting of the creditors of said Librovicz in New York, which was held October 19th, 1894. The witness answered in the affirmative, when he was asked by defendant's counsel the following question: 'Q. And didn't

you say at that time (referring to the creditors' meeting) that Librovicz had transferred to you property to the value of more than $100,000 to secure the claim of Richard & Company and the bank, and that if the creditors would give him an extension of three, six, nine and twelve months, that you would turn the property all back?' To this question counsel for the plaintiff objected, on the ground that it was irrelevant, immaterial, and outside the direct examination of the witness. The objection was sustained. Counsel for the defendant duly excepted. 14. One Herman A. Curiel, president and treasurer of said Growers Company, was called as a witness by the defendant, and having testified to certain conversations had by him with said Richard relative to the arrangement between the plaintiff and said Librovicz touching the $2,000 loan and the delivery of Exhibits A, B and C to the plaintiff, he was asked by the defendant's counsel the following question: ' Q. Passing that, then, Mr. Curiel, was any statement made by Mr. Richard at that time with regard to the claim of either himself or the bank against Mr. Librovicz: I do not ask what it was, but I ask first, whether any statement was made about it?' Plaintiff's counsel objected to the question. The court sustained the objection and excluded the question so far as it called for statements made by Richard regarding his own claim or that of his firm. Defendant's counsel duly excepted to the ruling. 15. Defendant's counsel asked said witness, Curiel, this question: ' Q. I think I last directed your attention, Mr. Curiel, to something that was said then at the creditors' meeting, and you made a statement as to what then occurred; now I want to ask you in this connection whether any statement was exhibited of the liabilities and assets of Librovicz?' To this question the plaintiff's counsel objected. Defendant's counsel claimed it was admissible in connection with testimony to be offered as to what Richard had said at said meeting about his and the plaintiff's relations to said Librovicz. The court sustained the objection and excluded the question, but permitted the defendant to give testimony as to all that said Richard stated relative to the plaintiff's claim to said certificates, or its relations to.

and negotiations with said Lobrovicz and its claims against him and his estate. Such testimony was introduced by the defendant, and said Richard was afterwards called by the plaintiff in rebuttal, and was examined and cross-examined as to his statements bearing upon said matters. 16. The defendant, upon the trial, claimed that the plaintiff, being at most but a pledgee of said warehouse receipts, had no such title as would enable it to maintain this action of replevin, and asked the court so to rule. He also claimed that said warehouse receipts bore upon their face notice that there were claims upon said whiskey, and that the plaintiff received said receipts with such notice that there were unsettled claims against and liens upon said whiskey, and that whatever rights the plaintiff acquired by virtue of the transfer of said warehouse receipts to it, said receipts were subject to all the equities between the parties, and that the plaintiff was not entitled to the immediate possession of said whiskey until said claims were all paid and satisfied; and he asked the court to rule that at the date of the plaintiff's demand, and at the commencement of this action, the defendant still held a lien upon said whiskey for the money advanced for the payment of the United States tax as aforesaid; and that the United Growers Company still had a lien upon said whiskey for the purchase price thereof; and that said whiskey was still subject to said attachment and the attachment lien thereof; and that until said liens were discharged and satisfied and said attachment released, the plaintiff could not maintain this action. 17. The court did not rule as thus requested, but ruled that the defendant had no lien upon said whiskey, valid as against the plaintiff, for said tax; that said Growers Company had no liens for the purchase price of said whiskey, good as against the plaintiff; that said pretended attachment of said whiskey in the hands of the defendant, by garnishee process, was void, because neither party to the action resided in New Haven, and, if not void, constituted no lien upon said whiskey, valid against the plaintiff; and that upon the tender to the defendant of said warehouse receipts and the storage charges as aforesaid, the plaintiff was entitled to the immediate possession of said goods."

Subsequently the trial court found the following additional facts : " (a) Upon the trial the defendant offered evidence tending to prove that there was an understanding between the Growers Company and the defendant, at the time said tax was paid and said whiskey removed from the bonded warehouse to the free warehouse, that the same should remain in the said free warehouse until said Growers Company should pay the amount of said tax, and that Librovicz, at the time of his purchase of said whiskey from said Growers Company, had knowledge of said arrangement.   (b) The defendant also offered evidence tending to prove that at the time of said purchase of the whiskey by Librovicz from said Growers Company, it was agreed between them that the same should remain in said warehouse as collateral security for the payment of the acceptances given as aforesaid in payment therefor, and that subsequently the defendant had notice of this agreement and instructions from the Growers Company to hold the whiskey until the amount should be paid.   (c) To all the evidence thus offered the plaintiff objected; but by agreement of the parties the evidence came in subject to the objection, to be ruled upon at the close of the trial, the party ruled against to be allowed an exception.   (d) The evidence so objected to was not contradicted, and from it I find the facts which said evidence, as above stated, tended to prove, to be proved.   I also find from the other evidence in the case that the plaintiff had no knowledge or notice of said facts. (e) The court pro forma overruled the plaintiff's objection to said evidence, and its exception is granted."

Judgment was rendered for the plaintiff to retain the goods, and for damages and costs ; and the defendant appealed.

*Charles ·S. Hamilton*, for the appellant (defendant).

On both principle and authority the judgment is erroneous. The maxim " *qui prior est tempore, potior est jure*," is universally applied both in law and in equity.   Story on Bailments, § 312.   A warehouse receipt is in no sense a promissory note, or what is generally called negotiable commercial paper. *Stein* v. *Rheinstrom*, 47 Minn. 476 ; *West Bk.* v. *Marion Co.*

*Dis. Co.*, 89 Ky. 91; *Pike* v. *Greenbaum*, 12 Ky. L. R. 423; *Cole* v. *Tyng*, 24 Ill. 99. A person receiving a warehouse receipt for an existing debt takes it subject to the equities between prior parties. *Vogelsang* v. *Fisher*, 31 S. W. 13. There can be no question but that the words printed in Exhibits A, B and C, "after the payment of the United States internal revenue tax and all other amounts due," are sufficient to put the taker of the receipt upon guard that there are prior equities between other parties, subject to which the taker of the receipt must hold the property. Dan'l on Neg. Instr. § 795; *Boswell* v. *Goodwin*, 31 Conn. 74. The plaintiff as pledgee cannot maintain this action. Wells on Replevin, § 94. The rulings of the court upon questions of evidence were erroneous and prejudicial to the defendant.

*James H. Webb*, with whom was *Siegwart Spier*, for the appellee (plaintiff).

Except for certain statutory provisions that have been enacted in many States, warehouse receipts are not *strictly negotiable*. They are regarded by the authorities like bills of lading, as *quasi-negotiable*. *Bank* v. *R. Co.*, 13 N. Y. 627. The transfer of a warehouse receipt or a bill of lading, accompanied by a sale or pledge of the property described, will have the same legal effect as the actual delivery of the property itself. *Western Union R. Co.* v. *Wagner*, 65 Ill. 197. The sole and only question presented by this record at all worthy of a moment's consideration, is this: Did the plaintiff take these receipts charged with any knowledge or notice of the claimed liens for government tax or purchase money? So far as the tax is concerned there can be no question; for the defendant stamped the words "tax paid" with his own hand on the receipts. The words "all other amounts due," undoubtedly relate only to the special and particular charge mentioned at the bottom of the receipt, namely: "Storage to be paid at the rate of eight cents per barrel per month." The particular statement therein governs and limits the general statement. Had it been the intention of the parties that

these receipts were issued subject to a lien for the purchase money, that fact could easily have been evidenced by a definite statement upon the receipts themselves. The rights of third parties who have taken warehouse receipts in the various transactions of commerce have received careful consideration in the following cases: *First Nat. Bank* v. *Dean*, 137 N. Y. 110; *Armour* v. *Michigan Central R. Co.*, 65 id. 111; *Gibson* v. *Stevens*, 8 How. 384; *McNiel* v. *Hill*, 16 Fed. Cases, No. 8914; *Western Union Ry. Co.* v. *Wagner*, 65 Ill. 197; *Cleaveland* v. *Shoeman*, 40 Ohio St. 176. See also *Whitlock* v. *Hay*, 58 N. Y. 484; *Voorhees* v. *Olmstead*, 66 N. Y. 113; *Fourth Nat. Bank* v. *St. Louis Cotton Compress Co.*, 11 Mo. App. 333; *Chicago Dock Co.* v. *Foster*, 48 Ill. 507. Upon the delivery to the plaintiff of the warehouse receipt by Librovicz, the plaintiff became invested with a special property in the twenty barrels of whiskey, and the right to demand their "immediate possession." Gen. Stat., § 1323. The rulings upon evidence were too manifestly correct to require argument.

ANDREWS, C. J. The plaintiff being the indorsee and holder of the warehouse receipts was the owner of the goods described therein. Such a receipt is regarded as representing the goods described in it; and an assignment of the receipt by an indorsement of it is, in the eye of the law, considered as equivalent to a delivery of the property itself. These receipts transferred to the plaintiff the legal title to the property and its constructive possession; and the defendant, as the warehouseman, from the time the plaintiff received the receipts, became its bailee and held the property for it. The delivery to it of the evidence of title was equivalent, in the then situation of the property, to the delivery of the property itself. *Gibson* v. *Stevens*, 8 How. 384, 399; *First Nat. Bank* v. *Dean*, 137 N. Y. 110; *Cushing* v. *Breed*, 14 Allen, 376, 380; Jones on Pledges, § 280; 28 Amer. & Eng. Ency. of Law, 673; *Burton* v. *Curyea*, 40 Ill. 320; *Harris* v. *Bradley*, 2 Dill. 248; *Young* v. *Lambert*, L. R. 3 P. C. 142; *Barber* v. *Meyerstein*, L. R. 4 H. L. 317; 1

Smith's Leading Cases, Part 2, p. 1197. Our statutes, § 3971, establish this general law as the law of this State.

.It is unnecessary to discuss whether or not our statute gives to this kind of receipt the character of full negotiability. We leave that until the case may arise. The plaintiff was, in any aspect, sufficiently the owner of the goods replevied to be entitled to the immediate possession of the same, unless there was enough in the claim made by the defendant to deprive it of such right. The defendant claimed that there was an agreement between him and the Growers Company, to which Librovicz assented, that the whiskey should remain in the warehouse until the money he had advanced to pay the United States revenue tax thereon should be repaid to him ; and that there was an agreement by Librovicz with the Growers Company, that the whiskey should remain in the warehouse until the purchase price was paid, and that he, the defendant, had been instructed by the Growers Company to hold the whiskey until these amounts should be discharged. It is found as a fact that the plaintiff had no knowledge of these agreements. We think, therefore, that the plaintiff cannot be affected by them. It would violate the character of these receipts to hold otherwise.

The defendant also claimed that the plaintiff had constructive notice of these liens, by the language of the receipts themselves ; that as the receipts provided that the whiskey was to be delivered to Librovicz or his order "after the payment of the United States internal revenue tax *and all other amounts due,*" the plaintiff was informed that some amounts were due which he was to pay, besides the revenue tax. We do not so understand this language. We think the "other amounts due" could only be held to mean proper warehouse charges ; as, for instance, the storage charges. And here again the character of these receipts and the purpose for which they were intended forbids any such claim as is made by the defendant. Besides, it seems to us that the defendant and the Growers Company are estopped to make any such claim : the Growers Company by their unconditional bill of sale, and the defendant by the receipt which he had himself

stamped with the words " tax paid " and then issued. *M'Neil* v. *Hill*, 1 Wool. (U. S.) 96 ; *Van Santen* v. *Standard Oil Co.*, 81 N. Y. 171 ; *Fourth Nat. Bank* v. *St. Louis Cotton Compress Co.*, 11 Mo. App. 333.

The question asked of the witness Kennedy was properly excluded. It was not cross-examination. The same may be said of the questions asked of the witness Richard, as set forth in paragraph thirteen of the finding. The witness had not in chief testified as to any such matter.

The matter in respect to which the witness Curiel was interrogated, as described in paragraphs fourteen and fifteen of· the finding, seems to us to have been one with which the plaintiff was not connected. It was between other parties. The letter, Exhibit D, was properly admitted. It was a part of the plaintiff's case. It was a part of the evidence to show the authority of M. Zunder & Sons, as agents of the plaintiff, to demand the whiskey of the defendant.

There is no error.

In this opinion the other judges concurred.