TATE, Judge.
The plaintiff holder presented two negotiable warehouse receipts to the defendant warehouseman, but the warehouseman delivered some 100,000 pounds of rough rice less than the two million-odd pounds described by the receipts held by the plaintiff. The present is a suit for value of the deficiency not delivered. The defendant warehouseman appeals from judgment in favor of the plaintiff holder.
Consolidated with the present for trial and appeal are three other companion suits involving for the most part identical issues: Edmundson-Duhe Rice Mill v. Hope Rice Mill, 189 So.2d 70; Estherwood Rice Mill, Inc. v. Hope Rice Mill, 189 So.2d 73; and Farmers Rice Milling Company, Inc. v. Hope Rice Mill, 189 So.2d 74; all of which are decided this date. In this opinion we shall discuss issues common to all of these companion appeals.
The present is a suit by Orange Rice Milling Company, a commercial partnership which is the holder of two negotiable warehouse receipts, against Hope Rice Mill, the warehouseman which had issued the re *66 ceipts, a partnership. Hope’s partners are impleaded individually. Hope appeals from adverse judgment. By answer to the appeal, the plaintiff Orange prays that we disallow a deduction from the awards allowed, by the trial court for normal shrinkage of the rice.
In 1957 the Hope Rice Mill, a licensed public warehouse, issued nine warehouse receipts representing nine lots of rough rice stored in separate bins, “Identity Preserved.” The warehouse receipts, each representing about one million pounds of rice, were issued to the Commodity Credit Corporation, a federal agency which had secured title to the rice as a result of federal price support programs.
In due course Commodity Credit endorsed without recourse each of these nine warehouse receipts variously to the four plaintiffs in the present companion suits. This was a result of rather complex bidding procedures which we need not detail here. It is sufficient to say that each of the plaintiff purchasers became holders for value by payment of the full price set forth for each lot of rice described, in Commodity Credit’s offer of availability for sale, by (1) lot number stored at a specified warehouse, (2) represented by negotiable warehouse receipt of specified number, with (3) a described quantity in hundred-pound-weights (cwt), together with (4) the grade, variety, and estimated milling yield of the lot.
The warehouse receipts each indicated that the lot of rice described was stored “identity preserved” in a specified bin at the defendant Hope’s warehouse. When the plaintiff holders variously called upon Hope for delivery of the rice described by the receipts, the quantity of rice delivered from each bin in response to the demand was in each instance generally 3-8% less than the number of pounds described by the negotiable receipt as stored with Hope.[1] Upon Hope’s failure to deliver the shortages after demand therefor by the plaintiff holders, these companion suits for the value of the deficiencies were instituted to recover same.
The trial court allowed recovery for the value of the deficiencies shown, less a deduction of 1% of loss of total weight of the lots for the normal shrinkage of rice. (By answer to Hope’s appeals, three of the plaintiffs question this latter deduction).
In contending .the trial court erred in allowing recovery, the defendant-appellant Hope principally argues that the lots of rice were actually sold to the plaintiff purchasers on an “as is, where is” basis, and that the provisions of the Warehouse Receipts Act *67 do not apply since the present receipts were issued only as a convenience and the purchases were not made in reliance upon these documents. This contention is based upon the alleged effect of agreements between Commodity Credit and the plaintiff holder and between Commodity Credit and the warehouseman Hope. This defendant-appellant additionally contends it is not liable for any loss in quantity because any such loss is not proved to have resulted from its own negligence.
We find little merit to Hope’s principal argument.
Commodity Credit’s offer to sell the rough rice did specify, as Hope alleges, that sales of rough rice would be made “ ‘as is, where is’ and without recourse to CCC. CCC does not warrant or represent that the grade, variety, weight and milling yield of the rough rice are as shown on the supplemental schedule (s) or warehouse receipts.” (Italics ours.) However, the agreement between Commodity Credit and all warehousemen such as Hope storing government-owned rice was that these warehousemen must issue negotiable warehouse receipts promptly upon receiving rice for storage. Uniform Rice Storage Agreement, Tr. 214 (Clause). Likewise, all offers by Commodity Credit to sell described the lots of rough rice offered as each represented by a specified warehouse receipt, which described the lot as containing rice of a certain weight and grade.
All purchasers testified that, while they may have verified the grade of the rice themselves before bidding, they could not verify the weight; their bids were based upon the number of pounds described as contained by the negotiable warehouse receipt issued by Hope. They testified that they would not have purchased (or in some cases would have been unable to finance the purchase of) the rice without its quantity and existence being represented by negotiable warehouse receipts. Although they realized that they had no recourse against Commodity Credit under the terms of the offer, the purchasers bid upon the lots of rice partially in reliance upon the circumstance that because of the negotiable warehouse receipts they (or their financiers) could reasonably rely upon the existence of rice to the specified quantity described by the receipts, which were endorsed to them by Commodity Credit upon their payment to it of the substantial price paid by them for the lot described as containing the quantity bid upon.
The plaintiff purchasers were holders in good faith for value, LSA-R.S. 54:58, of negotiable warehouse receipts, 54:5, duly negotiated to them, 54:38, which receipts had been issued under the terms of and subject to the Uniform Warehouse Receipts Act as enacted by the Louisiana legislature, LSA-R.S. 54:1 et seq. The defendant warehouseman was therefore obligated to deliver to these holders the goods described in the warehouse receipt according to the terms of the receipt. 54:8, 54:41.
One of the obligations assumed by the defendant warehouseman in issuing the negotiable warehouse receipt is that provided by LSA-R.S. 54:20: “A warehouseman shall be liable to the holder of a receipt, issued by him or on his behalf by an agent or employee, the scope of whose actual or apparent authority includes the issuing of warehouse receipts, for damages caused by the non-existence of the goods or by the failure of the goods to correspond with the description thereof in the receipt at the time of its issue. * * * ” (Italics ours)
The proof clearly indicates Hope’s liability as warehouseman under this provision for damages caused by the non-existence of or the failure of the rice to correspond in weight to the description contained on 'the warehouse receipts.
The evidence reveals that no effort was made by Hope to verify the weights of the lots before issuing warehouse receipts upon each based upon the railroad freight weight These lots of rice were received *68 by Hope in April, May, and June of 1957; most of them were found to be infested by weevils. They were fumigated under Commodity Credit’s instructions, and the warehouse receipts were not issued until July 18, 1957, when government inspectors found the lots free of further infestation. The lots were not reweighed before the negotiable warehouse receipts were issued describing each lot as containing the weight reflected by the original railroad shipping forms.
The proof thus preponderates that the gross deficiency in weight between that described on the warehouse receipts and that actually contained in each lot resulted primarily because of the complete failure of the defendant warehouseman to make any effort to verify that the warehouse receipts correctly described the quantity of rice represented by each receipt.
We are not impressed by the defendant warehouseman’s contention that the regulations of Commodity Credit required it to list railroad weights instead of actual weights upon the negotiable warehouse receipts issued by it. The warehouseman Hope’s partners did testify to such effect, claiming there was a contract with Commodity Credit so requiring, and a minor employee of Commodity Credit likewise testified of his belief to this effect.[2] However, the only contract in evidence introduced by Hope, Tr. 214, does not provide so; instead, it provides that negotiable warehouse receipts must be promptly issued upon receipt of rice.
 The provision in the Commodity Credit storage agreement that negotiable warehouse receipts be issued implies that, in conformity with the Warehouse Receipts Law, the warehouseman should not issue such receipts with inaccurate descriptions of the goods or their actual quantity. 54:20. Further, having issued a negotiable warehouse'receipt regular on its face, the warehouseman cannot set up, as a defense to a demand by the holder for the delivery of the goods described by it, any alleged equities or side-agreements between the warehouseman and Commodity Credit, the original depositor (bailor). National Union Bank of Reading v. Shearer, 225 Pa. 470, 74 A. 351 (1909); State Bank of City of New York v. Waterhouse, 70 Conn. 76, 38 A. 904 (1897); 93 C.J.S. Warehousemen & Safe Depositaries § 27 (d), page 438; 56 Am.Jur., “Warehouses”, § 66, page 352; Annotation, “Right of Purchaser of Warehouse Receipt against Warehouseman,” 38 A.L.R. 1205, § V(d), page 1213.
Alternatively, the appellant Hope strongly contends that it is not liable for the deficiency because the plaintiff holders did not prove that Hope failed to exercise due care and because the evidence indicates that the rice as delivered to Hope was infested with weevils, which was a probable cause of the deficiency in weight between that stored and that delivered. In this argument, the warehouseman Hope relies upon the provision of LSA-R.S. 54:21: “A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary for any loss or injury to the goods which could not have been avoided by the exercise of such care.” (Italics ours.)
The evidence shows, however, that the infestation was discovered and cured by fumigation prior to issuance of the warehouse receipts, which were not issued until by government inspection the rice-lots were found to be free of infestation. No live weevil infestation was found in the rice-lots in the subsequent periodic govern *69 ment inspections of them. We pretermit whether the warehouseman would be relieved of liability for loss where there was a failure by him to discover weevil infestation and thus to enable the owner to take steps against deterioration; it suffices here that no such cause of weight loss is proven by this record.
Indeed, the evidence of probable weight loss through weevil infestation indicates that the negligence of Hope in issuing the negotiable warehouse receipts without reweighing the rice is the most probable explanation of the discrepancy between the weights reflected on the receipts and those shown by railroad weights at the time of delivery (before the weevil-infestation was discovered and cured).
We think, therefore, that the trial court correctly held that under LSA-R.S. 54:20 (quoted above) Hope is liable to the plaintiff holders of the warehouse receipts for the discrepancy between the quantity of the rice described as represented by each warehouse receipt and the quantity actually delivered to them upon their tender of the warehouse receipts for delivery to them of the rice-lots thereby represented.
Under LSA-R.S. 54:20, the plaintiff holders are entitled to recover the damages caused them by these shortages. We find no error in the trial court’s calculation of this at the price per cwt. paid by the holders to obtain each lot. Under the circumstances reflected by this record, this was shown to be the best indicia of market value of the shortage of rice paid for by purchase of the warehouse receipts but not delivered because of the discrepancies in the description of quantity reflected by the receipts in question.
Hope argues that in fact no damages were proved because the full agreement between the plaintiff buyers and Commodity Credit permitted them to deliver back milled rice of specified quantity and for a specified price, which would in effect permit them to recover the full price paid for any rice bought under the agreement. See description of marketing agreements for conversion of rough into milled rice at Republic Rice Mill, Inc. v. Empire Rice Mills, Inc., 313 F.2d 717 (CA 8, 1963).
This argument has no merit. The purchasers in fact paid a substantial price for certain lots of rice each represented by a warehouse receipt describing it as to quantity. The price of necessity was based upon this quantity stated, as well of course as upon the quality and type of rice contained in the lot. The plaintiffs thus in fact paid for rice but did not receive the quantity for which they paid. They are entitled to recover the value of the shortage of rice.[3]

Deduction for natural shrinkage: The plaintiffs’ answers to the appeals.

Against this shortage, however, the trial court deducted an allowance for shrinkage of 1% of the total weight of the rice. The trial court found that the evidence shows that, when stored, rice has a tendency to lose this percentage (maximum) in weight, due to loss of moisture or from other natural causes beyond the control of the warehouseman or the owner. By answers *70 to the appeal, the plaintiffs request dis-allowance of this deduction.
We find no manifest error in the trial court’s allowance of a deduction from the defendant warehouseman’s obligation to deliver the quantity of rice described, based upon a natural shrinkage of the rice beyond the control of the warehouseman. While the evidence as to this shrinkage is not entirely clear, admissions of some of the plaintiff’s witnesses indicate that natural shrinkage of some degree is common. Prior to suit, at least two of the plaintiffs admitted that a 1% (maximum) deduction from the gross weight of rice described could reasonably be justified for such cause.
The general rule is a prima facie case of negligence against the warehouseman is established when, after delivery in (or restoration to) good condition, the goods stored with a warehouseman are less in quantity or quality upon delivery to the depositor. Jeter v. Lachle, La.App. 2 Cir., 106 So.2d 808; Fidelity & Deposit Co. of Maryland v. Rednour, La.App. Orleans, 44 So.2d 215. This principle is relaxed, however, where it is shown that the goods are of such a nature that they will deteriorate or perish from natural causes or inherent defects. Walding v. Harris, La.App. 2 Cir., 193 So. 492; Nolan v. Pelican Cold Storage & Warehousing Co., La.App. Orleans (unreported cases) (No. 8307); cf. also McDonald v. Badie, La.App. Orleans, 198 So. 545.
Under this latter principle, the deduction for shrinkage is not manifestly erroneous under the evidence reflected by this particular record. We therefore deny to the plaintiffs the relief requested by their answers to the appeal that we disallow the trial court’s deduction for the loss of weight through natural shrinkage from the defendant warehouseman’s obligation to deliver the full quantity of rough rice described by the warehouse receipts.

Decree

For the reasons assigned, the judgment of the trial court is affirmed at the cost of the defendants-appellants.
Affirmed.
On Application for Rehearing En Banc. Rehearing denied.

. The nine warehouse receipts and pertinent data are as follows:
WAREHOUSE RECEIPT NO. PURCHASER (Plaintiffs in this and the companion suits) WEIGHT ON RECEIPT (pounds) WEIGHT DEUIVERED (pounds) SHORTAGE (pounds)
38243 Orange 1,236,680 1,166,020 70,660
3S245 Orange 1,283,440 1,247,285 36,155
38235 Edmundson 1,264,400 1,245,313 19,087
38242 Edmundson 1,310,860 1,233,650 77,210
38237 Edmundson 1,224,040 1,119,230 104,810
3S247 Edmundson 1,181,000 1,149,260 31,740
38246 Estherwood 1,254,100 1,182,860 71,240
38241 Estherwood 1,299,745 1,257,640 42,105
38250 Farmers 567,000 541,200 25,800.

. This employee also testified, however, that the warehouseman could (and should) have the lot of rice re-weighed before issuing a receipt if there was any question as to whether the railroad weight reflected its actual weight.

. Under the agreements, the plaintiffs were either required or entitled (the evidence varies and the agreements differ) to deliver hack milled rice of a certain quantity and at a certain price. However, they were required or entitled to do so irrespective of whether they received the full quantity of rough rice for which they paid by purchasing the lot of rice represented by the warehouse receipt in question. The agreements regarding the purchase hack of milled rice by Commodity Credit are thus immaterial to the damages caused the plaintiffs by their failure to receive the full quantity of rice for which they paid. We include this explanation in deference to the apparent sincerity of counsel in advancing this argument that the plaintiffs were not damaged when they did not receive rice for which they had paid.