No. 9855.
Orleans Appeal.

---

ALBERT BIANCHI, Appellant, v. ANTHONY MUSSACHI.

---

(December 15, 1924, Opinion and Decree.)
(January 5, 1925, Rehearing Refused.)
(March 3, 1925, Decree Supreme Court.
Writ of Certiorari and Review Denied.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest, Municipalities, Par. 225; Automobiles, Par. 4 d.**
It is the duty of courts to rigidly enforce the traffic ordinances in order to secure public safety.
Those who violate them must pay for the damage resulting from a collision.

2. **Louisiana Digest, Automobiles, Par. 4 a.**
Vehicles approaching from the right have the right of way.

3. **Louisiana Digest, Damages, Par. 1.**
It is not necessary that a plaintiff should have had the repairs made, or, being made, should have paid for them; the damage done to his auto constitutes his cause of action.

**4. Louisiana Digest, Damages, Par. 1.**

Nor does it matter that the auto was old and had cost but little less than the repairs.

**(C. C. Art. 2315—Editor's Note.)**

Appeal from First City Court, Hon. Leon Labatt, Judge.

Plaintiff sues the defendant for damaging his automobile in a collision. There was judgment for defendant, and plaintiff has appealed.

Judgment reversed.

Jos. Rosenberg, attorney for plaintiff and appellant.

John C. Hollingsworth, Samuel J. Tennant, Jr., attorneys for defendant and appellee.

CLAIBORNE, J. Plaintiff sues the defendant for damaging his automobile in a collision.

He alleges that on July 9, 1924, he was driving an auto up Chartres Street; that upon arriving at Esplanade Street he came to a full stop; that he noticed defendant's auto proceeding down Chartres Street, which stopped on the car tracks on the intersection of Esplanade and Chartres Street; that plaintiff then drove his auto into Esplanade Street in the direction of Royal Street; that defendant's chauffeur negligently started his car, causing it to crash into petitioner's auto with violence, causing a damage of $148.85.

The defendant denied all the allegations of plaintiff's petition, and further answering averred: That his agent was operating his auto "in and upon a neutral ground, car-tracked, right-of-way Avenue, to-wit, Esplanade Avenue", and immediately prior to the collision "had come upon the intersection of the neutral ground between the two sides of said Avenue where she stopped and gave the usual signal", and then proceeded from said neutral ground on the neutral ground side of Esplanade Avenue "turning to the left and in close proximity to the

neutral ground, as provided in the traffic ordinances, when plaintiff's automobile proceeding generally in a westerly direction up Chartres Street from below Esplanade, without stopping, signalling, or due care and caution, swung wide around the Chartres intersection on the lower side of Esplanade Ave., towards the neutral ground of Esplanade Avenue directly in front of and in close proximity to defendant's automobile and so suddenly as to make it impossible for defendant and his agents to stop the said automobile before the impact"; that plaintiff's acts above set forth constitute not only gross negligence, but also contributory negligence on the part of said plaintiff, and that plaintiff's acts, his negligence and his contributory negligence, caused or gave rise to the damage to plaintiff's automobile."

There was judgment for defendant, and plaintiff has appealed.

The decision in this case is more important to the public in defining the rights and duties of persons driving vehicles under similar conditions, than in deciding who is entitled to judgment between the plaintiff and the defendant.

As the traffic ordinance is the law of the case, and as the violation of that ordinance imposes liability, it is important to know what the ordinance provides.

Ordinance 7490, Commission Council Series, adopted August 7, 1923, which is the latest expression of councilmanic will, provides as follows:

Page 2, Article I, Sec. 1. "A vehicle, except when passing a vehicle going in the same direction, shall keep to the right hand curb as practicable."

"In turning to the right at a street intersection, hug the right hand curb."

"The turn to the left at street intersection must be made around the center of the intersection as illustrated above. (The illustration has a dotted line along the right of the street, along which the vehicle is moving, along the right of the center of the street, then turning to the left, along

the right hand curb of the side walk.)"

"The left turn illustrated above is a violation of the ordinance." (The illustration has a dotted line along the right of the street, then before reaching the corner, crossing and as near the right hand curb as possible.)

Sec. 2. "On any Avenue, street or boulevard, divided longitudinally by a parkway or walk, vehicles shall keep to the right of such division. On streets so divided all vehicles, except when in the act of passing a vehicle ahead shall keep to the right of the center of the roadway so as to permit the passing of faster moving vehicles on the left. Driving against or near left hand curb on street so divided, except when passing another vehicle, is strictly prohibited."

Sec. 4. "A vehicle turning into another street to the right shall turn corner as near the right diagonally to the left until it reaches near the side of the sidewalk on the right."

Sec. C. "A vehicle when on a street divided by a neutral ground, desiring to turn to the left across the neutral ground shall turn to the left across the neutral ground corner as near the left hand curb as possible. A vehicle intending to turn across the neutral ground should move to the left hand side of the street when about fifty feet from the corner and hug the curb until the intersection is reached, then turn as in the illustration."

This section refers to vehicles driving along either side of the neutral side, but not to vehicles only crossing the neutral ground. Defendant's attorney was in error when he stated in argument that his client was driving along Esplanade Avenue. The testimony of the witnesses for both the plaintiff and the defendant establishes with absolute certainty that the defendant's car was running down Chartres Street from Canal to Esplanade Avenue. See pages 2-10 and 14 for plaintiff, and pages 8 and 18 for defendant.

Sec. 7 (d) p. 7. "On streets and Avenues having neutral grounds and carrying street car lines, vehicles crossing such neutral grounds shall have right of way to complete the crossing of the roadway of such street or avenue under the following conditions: Provided the vehicle shall come to a full stop when about to leave the neutral ground and enter the roadway, shall signal with horn, and give opportunity for approaching vehicles in the roadway to come to a stop; it being the intention of this provision to require vehicles in said roadway to stop upon receiving reasonable warning in order that vehicles standing on the neutral ground shall be permitted to complete the crossing of, or turning into, the roadway."

We do not consider that the above section has any application to this case.

It is for the benefit exclusively of vehicles crossing neutral grounds and against vehicles driving along either roadway of an avenue divided by a neutral ground.

But it is not against vehicles entering avenues with a neutral ground, from a cross street, counsel for defendant, in his brief, admits that construction to be correct.

He says on p. 4:

"The Court is also directed to the fact that if the car of the plaintiff stopped, as plaintiff says it was stopped, but as is denied by the witnesses of the defendant, it was a car not in the roadway, and therefore no warning of any kind was due to it, as the warning was only to cars then in the roadway, that is, in Esplanade Avenue, and not a car stopped at the intersection of Chartres Street on the downtown side with Esplanade Avenue on the lower side."

Sec. 8, p. 8. "Vehicles approaching from the right shall have the right of way as illustrated above."

Only four witnesses testified as to the accident.

For the plaintiff, the plaintiff himself and a guest in his car at the time of the collision. For the defendant, his two daughters, aged 20 and 21, who were in the car, one of whom was acting as chauffeur. The plaintiff's witnesses testified that in turning to the right, from Chartres Street into Esplanade Street, they hugged the right hand sidewalk. This was strictly in accordance with Sec. 4 of the ordinance quoted above.

The defendant's witnesses on the other hand, both say that they turned to the left into Esplanade Avenue, keeping within a foot or three from the neutral ground. This was an erroneous appreciation of Sections 1, 2 and 4 of the ordinance, and a clear violation of it, as shown by the illustration at the bottom of p. 4 of the traffic ordinance booklet. The defendant should have driven down the right hand side of Chartres Street, crossed on the river side of the neutral ground, thence around the center of the intersection of the lower side of Esplanade and Chartres, thence along the downtown curbing of Esplanade Street; in other words, the very reverse of what the chauffeur said she did. If she had pursued that course, according to her own testimony, the collision would not have occurred. The decisions of this Court have been that it is necessary to enforce the traffic ordinances, and that the party who violates them must pay for the damage resulting from a collision. Ct. App. Nos. 7891, 8191, 8245, 8249, 8250, 8297, 8820, 8905, 9205; Jones vs. N. O. Ry. & Light Co., 123 La. 1060, 49 South. 706; Police Jury vs. Mayor of Morgan City, 145 La. 359, 82 South. 370; Manceaux vs. Hunter Canal Co., 148 La. 97, 86 South. 665.

Whatever discrepancy exists in the testimony, two facts stand out in bold relief. The first is that plaintiff's car was on the right of defendant, and that under the last clause of Sec. F the former had the right of way. The second is that plaintiff's car was the first to turn into Esplanade Avenue, and that defendant's car ran into it and caused the damage.

The amount of the damage is established by the positive testimony of three witnesses: The plaintiff, the mechanic who made the repairs, and his partner in the business, who was also plaintiff's guest on the occasion of the accident. The details of those repairs are given by the plaintiff himself. They are as follows: A new left rear wheel, a new rim, a new tire, a tail light, two new fenders, a new axle, a new inner tube, a second-hand gas tank. They are attested to be correct by the mechanic and by his partner who purchased the material and furnished them. These witnesses are contradicted only by the negative testimony of two witnesses, one of whom is an attorney at law representing the defendant herein, and the other is a claim adjuster for the Union Indemnity Company who was raised with the above-named attorney. We consider the testimony of plaintiff's witnesses of stronger probative value.

The defendant resists payment on three other grounds:

1. That because plaintiff has not paid for the repairs, although they have been made, he has no cause of action; that there is no damage in law until the bill for the repairs has actually been paid. This is a novel proposition with which we cannot agree. The mere obligation to pay for the repairs is sufficient. Even if no repairs had been made, defendant would be bound to pay for the damage committed by him.

2. That the fenders and other parts of the car damaged were old and dilapidated. The law makes no provision for deduction of old for new. The defendant's obligation is to replace all the parts of the car he had damaged.

3. That plaintiff had paid only $265 for his car two years before, and that the allowance of $148.85 damages for repairs was out of all proportion, and that the car at the present date was worth only $100. Defendant's obligation was to put back plaintiff's car in the same good running order in which it was prior to the accident. It is his misfortune if this has cost $148.85. The price plaintiff paid for it, is no concern of his. It often occurs that the cost of repairing a car will amount to more than its actual value, and sometimes to more than the price of a new car, on account of the labor of taking the damaged car apart and the cost of the new parts and the labor of assembling them.

It is therefore ordered that the judgment appealed from be reversed and set aside; and it is now ordered that the defendant, Anthony Mussachi, be condemned to pay to the plaintiff, Albert Bianchi, the sum of One Hundred and Forty-eight 85-100 Dollars with five per cent per annum interest from August 12, 1924, until paid, and all costs of suit.