**WALDING v. HARRIS.**

No. 6112.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1940.

Gus A. Voltz, of Alexandria, for appellant.

Polk & Robinson, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiff sues to recover the market value of several tons of cabbages deposited for preservation in cold storage in defendant's ice factory, and which, he alleges, deteriorated, rotted and became worthless through the negligence of defendant in that he did not maintain the temperature necessary to prevent the cabbages from decomposing.

Plaintiff alleges that on or about March 8, 1937, he delivered into defendant's cold storage plant eight (8) tons of No. 1 Rio Grande green cabbages, in good condition, after having rented space therefor from defendant; that on or about March 20th he went to defendant's factory for the purpose of removing the cabbages and then, for the first time, discovered their rotten condition; that all the cabbages were immediately removed, but from the lot only 1900 pounds were salvaged.

Defendant admits that the cabbages were left in the cold storage apartment of his ice plant in the early part of March, 1937, and that he charged plaintiff therefor, but denies that he solicits vegetables for storage; that he allowed plaintiff to deposit one truck load (4 tons) of the cabbages in his cold storage more as an accommodation to him than as a business matter, and did so only on plaintiff's insistence; that the second load of cabbages, also 4 tons, was left in said cold storage during his absence and without his prior knowledge or consent. He also denies that the cabbages rotted, as alleged by plaintiff, but, alternatively if any loss was sustained on that account, that such loss did not accrue as a result of any negligence or carelessness on his part, but was due to deterioration, having its incipiency prior to delivery to his plant, which, in turn, was due to improper and inefficient handling, transporting, etc., from the Rio Grande Valley to the City of Alexandria, a distance of some 700 miles, and thereafter. Liability to plaintiff to any extent is denied.

From a judgment for plaintiff for $291, defendant prosecutes this appeal.

We are clear in the opinion that the judgment is erroneous.

Plaintiff and his witnesses testified that the first load of cabbages was cut and delivered into his truck the morning of March 6th, at which time the temperature was sixty degrees; that the load was driven directly to Alexandria, approximately 650 miles distant, and delivered in cold storage about eight o'clock the following morning, a Sunday. It required twenty hours to make the trip. They also testified that the second load was cut at or about the same place as was the first one, loaded into the truck and also brought directly to Alexandria and placed in storage the following morning, being March 11th. This trip also required about twenty hours.

It is shown that all these cabbages were No. 1 grade, green and sound when delivered by the producer into plaintiff's truck.

Plaintiff testified that after hauling away the 1900 pounds of sound cabbages, the remainder was removed in two truck loads and given away because worthless.

Defendant is positive that plaintiff made many loads of the cabbages, in small quantities, as if peddling them, before the entire amount was removed from the ice plant. He is positive plaintiff made no complaint to him about the cabbages' bad condition until a brief time before this suit was filed, some nine months after the last of the cabbages were removed.

Defendant does not, as alleged by plaintiff, solicit or receive for storage any vegetables, as a rule. He only agreed to allow plaintiff to deposit the first truck load in his cold storage after plaintiff's insistence that he do so as a favor to him and because, as he stated, after considerable effort, he was unable to dispose of the load.

We are convinced that the first load of these cabbages was not brought directly to defendant's plant from the Rio Grande Valley, but, on the contrary, are convinced that plaintiff hauled them about for more than one day trying to sell them. He says he delivered them at the plant on Sunday, March 7th. He is clearly in error in this statement. He offered to sell the entire load to a produce merchant in Alexandria on a week day, who declined to purchase them because their condition disclosed that deterioration had set up from over heating. And since plaintiff says all the cabbages, save the 1900 pounds salvaged, rotted while in storage, it is not very far fetched to think the second load was handled in the same manner as was the first one.

494

Green cabbage, the record discloses, a fact well known to all, is a highly perishable vegetable. Unless properly handled, protected, etc., from the time cut, will early set up deterioration. Exposure to heat from sunshine; or being cut during a rain, are factors which hasten deterioration. The second load was cut in a drizzling rain.

The testimony of all the witnesses, including one for plaintiff, who have had long experience in handling and selling cabbages, agree that after deterioration once sets up, it will not be entirely arrested by cold storage. These witnesses all agree that if such cabbages are handled properly after being cut and are placed in storage before deterioration begins, they will remain in good state of preservation for thirty days; that a temperature from 34 degrees to 40 degrees above freezing is sufficient for the purpose of such preservation. The testimony of defendant shows that such a temperature was maintained continuously while the cabbages were in his cold storage. No one disputes him on this point. Large quantities of barreled beer are regularly kept for cooling in the storage room where the cabbages were. Temperature necessary to keep the beer cool is sufficient to preserve healthy cabbages for a month or more. None of these cabbages were in storage for more than two weeks.

It is obvious to us that these cabbages, if they rotted to the extent plaintiff claims, did so because deterioration, attributable to improper handling, from excessive exposure to sunshine, rain, etc., before being deposited in defendant's plant, set up.

Defendant is not a warehouseman. Primarily he manufactures and sells ice. He does receive barreled beer for cooling; but as plaintiff seeks to hold him responsible under the law governing warehousemen, we shall predicate our opinion upon this position.

Act No. 221 of 1908 defines who are warehousemen, their duties, responsibilities, etc. Sec. 21 thereof reads: "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary for any loss or injury to the goods which could not have been avoided by the exercise of such care."

Therefore, when a warehouseman exercises that degree of care, as would be exercised by a reasonably careful owner of similar goods, unless there is an agreement to the contrary, no liability attaches for loss or injury to the goods while in his possession. In the present case, defendant did exercise that degree of care required of him by law. The temperature in the cold storage was maintained at a level sufficient to have preserved the cabbages if healthy and free of incipient deterioration when deposited therein. In no sense of the word was he an insurer.

Defendant's counsel, in brief, states that the lower court based its judgment upon the Supreme Court's holding in Marks & Rittner v. New Orleans Cold Storage Company, 107 La. 172, 31 So. 671, 57 L.R.A. 271, 90 Am.St.Rep. 285. That case was decided prior to the passage of Act No. 221 of 1908. The facts of the case, anyway, were quite different from those in the case at bar. There, dry peas were stored. In such condition, peas are not nearly so liable to deteriorate as cabbages. In addition, there was a written contract between the parties which bore upon the question of liability; also defendant's business was that of operating a cold storage for all purposes for which such a business is established.

The Orleans Court of Appeal in Robert Nolan v. Pelican Cold Storage & Warehousing Co., Ltd., Orleans No. 8307, on its docket, held: "A warehouseman to whom goods are delivered in good condition is prima facie negligent when the goods are returned in a damaged condition, only when the goods are of such a nature that loss or damage could not have occurred without negligence, and the rule does not apply where they would deteriorate or perish from inherent defects or natural causes."

We think this rule correctly covers the law on the point. It but announces the law as expressed in Sec. 21 of Act No. 221 of 1908, quoted herein.

The judgment appealed from is annulled, reversed and set aside and plaintiff's suit dismissed at his cost.