## McDONALD v. BADIE.

### No. 17361.

Court of Appeal of Louisiana. Orleans.

Nov. 18, 1940.

Rehearing Denied Dec. 16, 1940.

Writ of Certiorari Denied Feb. 3, 1941.

Elwood R. Clay, of New Orleans, for appellant.

Ernest J. Robin, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by the owner of a baby grand piano against a warehouseman for damages to the piano in the sum of $200 "due to the carelessness and negligence on the part of defendant in not properly storing same, and (petitioner) now avers that the doctrine of 'res ipsa loquitur' ap-

plies in this case". The defendant denied all responsibility for the damage to plaintiff's piano and avers that the piano was in a bad condition when stored with him and that it was returned to plaintiff in the same condition in which it was received.

There was judgment below in favor of plaintiff as prayed for and defendant has appealed to this court.

On the trial of the case defendant asked for a continuance upon the ground that Lionell Leon, his witness, though subpoened, did not appear because, according to the sheriff's return, he could not be located. Defendant and appellant now complains that the continuance should have been granted and asks that the case be remanded in order that such action may be taken by the trial court. Article 464 et seq. of the Code of Practice establishes the practice concerning continuances to be substantially as stated in Rule VII of the First City Court:

"Section 1. The absence of a witness on the day of trial shall not entitle a party to a continuance or an attachment, unless the name and address of the witness have been left with the Clerk of Court before 12 o'clock the day previous.

"Section 2. If the witness has been served, an attachment may issue at the request of either party.

"Section 3. If the return of the Constable on the subpoena is that the witness cannot be found, the party shall not be entitled to a continuance, unless he make affidavit that the address given is correct, and state the facts to be proved or sworn to by such witness, in which case, if the opposite party will not admit that such absent witness, if present, would testify as stated in the affidavit, a continuance shall be granted; otherwise, if the party admit that the absent witness would so testify, the trial shall proceed."

See, also, Saul v. See's Curator, 2 La. 130, 131; Lizardi v. Arthur & Fulton, 16 La. 577; Succession of Oliver, 1 La.App. 526.

Counsel for defendant failed to comply with the Code of Practice, since the record indicates that he did no more than request a continuance upon the ground that his witness did not appear. This is not enough.

In Nolan v. Pelican Cold Storage & Warehousing Co., Ltd., Orleans Appeal No. 8307 (unreported) [See Louisiana and Southern Digest], the responsibility of a warehouseman is discussed. There it was said: "A warehouseman to whom goods are delivered in good condition is prima facie negligent when the goods are returned in a damaged condition, only when the goods are of such a nature that loss or damage could not have occurred without negligence, and the rule does not apply where they would deteriorate or perish from inherent defects or natural causes."

In the recent case of Walding v. Harris, 193 So. 492, 494, the Court of Appeal for the Second Circuit quoted from our opinion in the Nolan case with approval, saying: "We think this rule correctly covers the law on the point. It but announces the law as expressed in Sec. 21 of Act No. 221 of 1908 [The Uniform Warehousemen Act] * * *".

In 67 Corpus Juris, under the title "Warehousemen and Safe Depositaries", Section 258, page 567, we find the following: "The burden of proof is on the bailor, in an action for loss of, or injury to, goods stored in a warehouse, to show that the loss or injury was caused by the negligence of the warehouseman; and, unless, otherwise provided by statute, the burden of proof does not shift, but remains on the bailor throughout the trial, although the burden of going forward with the evidence may shift. Nevertheless, it will be sufficient to make out a prima facie case for the bailor to prove facts from which such negligence may be presumed. Subject to certain exceptions elsewhere considered, it has been held that this requirement is satisfied by showing that the goods were delivered to the warehouseman in good condition and that they were lost or destroyed, or returned in a damaged condition, and that it then devolves on the warehouseman to show that such loss or injury was not due to his negligence."

The following Louisiana cases were cited in support of the text: Scott v. Sample, 148 La. 627, 87 So. 478; Marks v. New Orleans Cold Storage Company, 107 La. 172, 31 So. 671, 57 L.R.A. 271, 90 Am.St.Rep. 285; Schwartz, Kauffman & Co. v. Baer, 21 La.Ann. 601; Marr v. Barnes, 1 Rob. 190; Levy v. Kirwin, 6 La.App. 93; Hartford Fire Insurance Company v. Doll, 5 La.App. 226.

An exception of no cause of action has been filed in this court since the submission of the case. It is based upon

the failure of the plaintiff to allege or prove specific acts of negligence on the part of defendant, but, as we have seen from the authorities quoted, it is sufficient for plaintiff to show that the piano was in good condition when delivered to the defendant and that it was returned in a damaged state, in order to make out a prima facie case of negligence which must be rebutted by the defendant.

Lottie Andrews McDonald, the plaintiff, was out of the city when the piano was moved to the defendant's warehouse. She testified, however, that she had paid $1,000 for it in 1924 and that she always kept it in good condition, and that when the piano was returned to her "all the parts were falling out from underneath, it was all in pieces, the piano was all wet * * *, the parts even fell out of the motor", and that the piano was an electric one which could be played either by motor or by hand at the will of the operator.

The plaintiff's daughter-in-law testified that she attended to the storing of the piano with other household articles in the absence of her mother-in-law, and that the piano was in perfect condition when delivered to the defendant; that when it was returned "the top of the piano was warped, the veneer was torn off and down below some of the pieces of wood were falling out and the bench was all apart".

Eugenia Priestly, a friend of the plaintiff, testified that she was present when the piano was moved by the defendant and that it was in perfect condition at the time, and that when returned "it was in such a terrible condition I didn't recognize it at all. It didn't look like the same piano."

Lucien Neuberger, a piano tuner, who had been employed by the plaintiff to tune the piano, testified that he saw it for the first time in January, 1938, when it was in perfect condition, and that he examined it again in September, 1938, after it had been taken out of storage when he found one side of the piano badly scarred, the top warped, the veneer loose with water damage to the outside and inside, the keys sticking together and also "the player action was chewed up by either rats, mice or moths". He estimated that it would cost $200 to put it in the condition that it was formerly in.

Saunders Badie, the defendant, testified that he was reluctant to store the piano because of its damaged condition; that it was "just a bunch of junk"; that he returned it in the same condition that he received it and that the plaintiff, at that time, made no complaint about it. He exhibited a storage receipt in which there is noted the following concerning the piano "legs broken and damaged". He stated that three men besides himself participated in the moving of the piano, but none of these men were produced on the witness stand and there is no explanation in the record of their failure to testify, unless one of them may be said to have been the absent witness. It thus appears that with the exception of the notation in the receipt concerning the damaged legs, there is nothing but the testimony of defendant to controvert the plaintiff's evidence.

■ If it be said that the testimony of plaintiff and of her friend and daughter-in-law is affected by their interest in the outcome of the litigation, the same cannot be said of Lucien Neuberger, the piano tuner, who is most emphatic in his description of the piano before and after its storage with the defendant. It will also be noted that no damage is claimed to the legs of the piano, which is said to have suffered chiefly from exposure to the weather, the keys being wet. The evidence preponderates in favor of the plaintiff and she must recover.

■ The sum of $200 is the only estimate we have in the record and that is given by Neuberger. In the absence of any countervailing proof we will accept it as the measure of damages. Counsel contends that the true criterion of the damage is not the amount necessary to restore it to its former condition unless such sum be less than the actual value of the piano. In other words, a piano worth $100 could not be damaged to the extent of $200. In the first place, there is no proof of the value of the piano in the record and in the next place, the rule in in such cases seems to be well settled and is, as stated in the case of Bianchi v. Mussachi, 1 La.App. 291, as follows:

"The law makes no provision for deduction of old for new. The defendant's obligation is to replace all the parts of the car he had damaged. * * *

"Defendant's obligation was to put back plaintiff's car in the same good running

order in which it was prior to the accident. It is his misfortune if this has cost $148.85. The price plaintiff paid for it, is no concern of his. It often occurs that the cost of repairing a car will amount to more than its actual value; and sometimes to more than the price of a new car, on account of the labor of taking the damaged car apart and the cost of the new parts and the labor of assembling them."

See, also, Vila v. Westfeldt, 7 La.App. 552 and Harrison v. Loyocano, 12 La.App. 228, 125 So. 140.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.