**FOLSE v. FLYNN.**
No. 17100.

Court of Appeal of Louisiana.   Orleans.
Feb. 10, 1941.

Milling, Godchaux, Saal & Milling and M. Truman Woodward, Jr., all of New Orleans, for appellant.

Lavinius L. Williams, of New Orleans, for appellee.

WESTERFIELD, Judge.

This suit results from a collision between two automobiles, one driven by the plaintiff, Norman Folse, and the other by the defendant, Dennis J. Flynn.   The accident occurred at the intersection of Metairie

Road and Pontchartrain Boulevard in the City of New Orleans, at about 6:30 a. m., October 19, 1936. The plaintiff alleges that he drove his Chevrolet Sedan into the intersection from Metairie Road carefully and prudently, and had almost completed the intersection when he was struck near the right, rear wheel by the Flynn car, which was being operated at "a terrific rate of speed", with the result that his car was damaged to the extent of $185.95 and he received physical injuries and was put to certain medical expense, for all of which he claims the sum of $4,421.06.

The defendant denied that his car was being operated at an excessive rate of speed and all other charges of negligence imputed to him by plaintiff, and averred that on the morning of the accident he was operating his Chevrolet automobile out Pontchartrain Boulevard in the direction of Lake Pontchartrain, and that as he entered the intersection of Pontchartrain Boulevard and Metairie Road, he slackened the speed of his automobile "almost bringing the same to a complete stop, shifted the gear of his automobile into low speed and proceeded to observe the intersection, aforedescribed, before attempting to cross same". He avers that the accident was caused solely by the negligence of the plaintiff in that he was driving at an "unlawful and negligent rate of speed" and "suddenly, and without warning or signal entered said intersection" and "attempted to cross said intersection" in front of defendant's automobile. Defendant reconvened and asked for judgment against the plaintiff for the cost of repairing his Chevrolet automobile amounting to $76.35.

The court, a qua, held that both drivers were guilty of negligence and dismissed both the main and the reconventional demands. The plaintiff has appealed to this Court.

In his reasons for judgment the learned judge, a quo, stated: "It is impossible for me to understand why two cars, in a broad, wide-open space such as the intersection of Pontchartrain Boulevard with Metairie Boulevard could possibly collide, under the circumstances as shown by the testimony in this case, unless both drivers were negligent and their negligence continued up to the moment of the impact."

■ It is undoubtedly true, as we have heretofore observed, that in most intersectional collisions both parties are at fault. Guernsey et al. v. Toye Bros. Yellow Cab Company, Inc., et al., La.App., 172 So. 459. We are not sure that this case is not an exception. However, the question of contributory negligence is not an issue unless it has been raised by the pleadings, for specific defenses must be specifically pleaded.

Counsel for appellee refers to paragraphs 4, 5, 6 and 7 of his reconventional demand which, in effect, he claims, meets the requirement concerning special pleading of this defense. Paragraph 4 charges the plaintiff, in general terms, with operating his automobile in a "reckless, unlawful and negligent manner and without due regard for the safety of persons or traffic, at a high, unlawful and negligent rate of speed". In paragraph 5 it is said that the accident occurred solely as a consequence of plaintiff's negligence and in paragraph 6 that the accident was due "solely as the result of the negligence of the defendant in reconvention", and, finally, in paragraph 7 it is alleged that the "collision complained of and the damage resultant therefrom was due to and caused solely by the negligence of the said Norman Folse."

■ All that can be said with respect to these allegations is that they amount to a charge of primary negligence.

In the case of Althans v. Toye Bros. Yellow Cab Company, 191 So. 717, 722, we said: "We experience no difficulty in determining that the allegations of the answer in this case are insufficient to raise the issue of contributory negligence. It is to be noted that throughout its answer the defendant specifically denies that its employee was at fault and affirmatively avers that the sole and proximate cause of the accident was the plaintiff's negligence, setting forth the particulars in detail".

■ The effect of the decision in that case is realized by counsel, who makes the novel contention that the decision can have no bearing upon the present controversy because the accident, which is the basis of this suit, occurred in October, 1936, whereas the Althans case was not decided until 1939. Counsel is confusing the effect of a decision of an appellate court with that of an act of the Legislature which, of course, is, or should be, a totally different proposition. Moreover, the Althans case did not announce any new doctrine for in the case of Gauvereau

v. Checker Cab Company, 14 La.App. 448, 131 So. 590, 591, decided in 1930, we said: "Contributory negligence must be specially pleaded and proven. No such plea is made in this case, and the city ordinance upon which defendant relies is not referred to in his answer. It is not sufficient to aver the negligence of plaintiff to be the sole cause of the accident".

See, also, Poncet v. South New Orleans Light & Traction Co., 3 La.App. 64; Giangrosso v. Schweitzer, 10 La.App. 777, 123 So. 127; Saks v. Eichel, La.App., 167 So. 464; Guillory v. Horecky, et al., 185 La. 21, 168 So. 481, and numerous other cases in this and other jurisdictions.

The defendant is charged with negligence in that he was driving at an excessive rate of speed and entered the intersection without stopping, at a time when plaintiff's car had pre-empted it.

Pontchartrain Boulevard is a roadway on the left bank of the New Basin Canal. It intersects Metairie Road at right angles at a point where a bridge spans the Canal. Metairie Road stops at the bridge, the prolongation of the roadway on the other side of the Canal being called "City Park Avenue".

At the time of the accident there was a taxicab on the bridge facing Metairie Road. There is a traffic light on an iron post embedded in a concrete cylinder about midway of the intersection, between the bridge and the far side of Pontchartrain Boulevard. The automatic traffic signal was not in operation, but a stationary yellow light, or caution signal, was burning. As has been pointed out in our discussion of the pleadings, the drivers of both vehicles charge each other with excessive speed. We are not concerned with this charge as it affects Folse, because if Flynn was guilty of causative negligence, plaintiff must recover in the absence of a plea of contributory negligence.

Folse testified that as he reached Pontchartrain Boulevard, he slowed his car, almost stopping it because of the presence of an omnibus, which was discharging passengers in that vicinity; that he then started across the intersection after having glanced in both directions along Pontchartrain Boulevard; that on his right he noticed defendant's car a considerable distance away; that as he entered the intersection he saw the taxicab on the bridge and keeping his eye on it to avoid striking it, proceeded across when, about ten feet from the bridge, he noticed the Flynn car bearing down on him at "a terrific speed, and I felt like hell, to tell you the truth. He didn't seem to notice me at all and he didn't endeavor to stop and the next thing I remember was a terrific crash and then I was in the hospital the next thing I knew also".

Whitney Ducote, the driver of the taxicab, testified that Flynn's car was speeding and that the Folse car was going slowly when struck. Miss Audrey Kenney, a young lady who was a passenger in the taxicab, testified to the same effect.

Folse was thrown out of the car and into the street, a circumstance which indicates that the collision was a violent one, thus tending to corroborate the evidence concerning the speed of the Flynn car.

According to Flynn his speed was between fifteen and eighteen miles per hour, perhaps twenty, and the speed of the Folse car was "rapid". He also says that he came to a momentary stop before entering the intersection. He is corroborated with respect to the momentary stop by S. P. Morere, a passenger in an automobile which was behind the Flynn car. He did not say how fast Flynn was driving at the time of the accident.

Ronald Lester, another witness for defendant, stated that he was waiting for the bus; that he did not know whether Flynn stopped before entering the intersection or not, but that he was going slowly and Folse fast.

The testimony of these two witnesses is criticised upon the ground that they are employed by the Works Progress Administration, with which Flynn is connected as one of the local superintendents. This fact alone is not sufficient to discredit their evidence, but their testimony is affected by certain discrepancies such, for example, as the statement of Morere and Lester that after the accident Folse was still in his automobile, from which he was removed by Flynn and Mr. Kenney, who, with his wife and daughter, were passengers in the taxicab. Ducote, Miss Kenney and Mrs. Kenney, each of whom is without conceivable interest in this suit, testified that Folse was knocked out of the car by the violence of the impact. Moreover, the dirt of the roadway had entered Folse's scalp, which was lacerated by the accident, as appears from the testimony of his physician.

■ Lester stated that he assisted in getting a cushion through the right rear door of the Folse sedan. The pictures of the Folse automobile, which have been introduced in evidence, show that the Folse car was not a sedan but a coach, with only one door on each side and it appears that Lester knew the difference between a coach and a sedan because of his occupation as an automobile mechanic. Morere testified that he did not see the taxicab on the bridge, although all the other witnesses did see it. Finally, the trial court found Flynn negligent, a conclusion which certainly cannot be said to be manifestly erroneous.

Folse's injuries were serious and very painful. Dr. Hanckes, his physician, stated that he suffered a fracture of the left clavicle and of the sixth rib, posteriorly, both fractures verified by X-rays, a deep laceration of the scalp which required the cutting out of tissue to remove the dirt of the roadway, and contusions and abrasions about the forehead. Anti-toxin was administered to prevent the development of tetanus. The doctor treated Folse for six or eight weeks. He was in bed for about two weeks and unable to work for seven weeks.

■ In Norman v. Little, 14 La.App. 298, 129 So. 459, we awarded $1,500 for a fracture of the left clavicle, contusions and bruises. In Quintell v. Ferran, 147 La. 153, 84 So. 570, the Supreme Court allowed $1,000 for a fractured clavicle or collar bone. However, the fracture in this case was unaccompanied with the painful consequences as in the instant case. In Mathews v. Hayne, 188 So. 462, the Court of Appeal for the Second Circuit awarded $3,000 for the fracture of several ribs, a broken arm, lacerations, bruises and contusions. In the instant case, we believe $2,000 to be a proper award.

■ Plaintiff also claims $195.95 as damages to his automobile, including $10 for the services of a wrecking car. The car was not repaired because, as plaintiff stated, he did not have the money, but an estimate of the amount necessary to repair the car is in evidence and plaintiff is entitled to have his car placed in the same condition as it was before the accident.

In Bianchi v. Mussachi, 1 La.App. 291, it was held: "It is not necessary that a plaintiff should have had the repairs made, or, being made, should have paid for them; the damage done to his auto constitutes his cause of action." (Syllabus by the Court.)

■ Claim is also made for doctor bills in the sum of $200, $10 for X-rays and $15.11 for medical expenses. Dr. Hanckes testified that he had charged the plaintiff $200 for his professional services which he considered a fair fee. The X-ray expense has been proven, but the medical expenses have not, and therefore, will not be allowed.

For the reasons assigned, the judgment appealed from is annulled, avoided and reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Norman Folse, and against the defendant, Dennis J. Flynn, in the full sum of $2,405.95, and for all costs.

Reversed.