Clarence F. Camp is the owner of a horse which was seriously injured when struck by an automobile truck owned by Lucien L. Pravata and operated at the time by an employee of Pravata acting within the scope of his employment.
Alleging that the accident had been caused by negligence of the said employee, Camp brought this suit against Pravata, and, taking advantage of the rights accorded by Act No. 55 of 1930, he also prayed for judgment against the latter's liability insurance carrier, National Casualty Company.
He claimed the following items of damage:
Hire of another horse during the 36-day period in which the injured horse could not be used ........... $ 72.00 Feed for the injured horse during that period .......... 12.50 Personal services of plaintiff in caring for the injured horse .................................... 15.00 Cost of the services of the veterinarian, Dr. Hamlet Moore, who treated the horse ......................... 160.00 ------- Total .............................................. $259.50
Though, in their answer, defendants denied any liability on their part, when the case came up for trial they admitted liability and contented themselves with an attempt to reduce the amounts claimed and to eliminate entirely the claim for the services of Dr. Moore on the ground that the doctor had not been employed by Camp at all, but had been employed directly by the National Casualty Company.
During the trial, plaintiff withdrew his claims for the two items of $12.50 for feed *Page 119 
for the injured horse and of $15 for personal services and attention to the horse, since it was shown that he had spent no more for feed and had rendered to the horse no more personal attention than would have been required had it not been injured.
There was judgment for plaintiff for $232.50 representing the cost of the services of the veterinarian and the hire of another horse. Defendants appealed. And when the matter was heard before us, they admitted liability for the $72 item but maintained that they should not be liable to Camp at all for the amount of the veterinarian's bill for the reason, as we have stated, that the said veterinarian was employed directly by the insurer and not by Camp; and, in the alternative, they contended that the amount of the bill should be substantially reduced since it is asserted by them that the value of the horse prior to the accident was considerably less than the amount of the said bill.
Thus, the controversy now is confined to only two questions: The first, one of fact — was Dr. Moore employed by Camp, or by defendant insurer? — and the second, one of law — when an animal is injured by the negligence of another, may the owner expend in treatment, or become liable for, more than the said animal is intrinsically worth, and then claim the whole amount from the tort-feasor?
When we come to consider the question of whether Dr. Moore was employed by Camp, we find that the evidence comes very close to showing that the doctor refused to treat the animal when requested to do so by Camp and did not commence to render his services until he had been requested to do so by the representative of the insurance company. Nevertheless, we find that he was summoned by Camp and that Camp requested him to treat the horse, and in view of this circumstance we reach the conclusion that, when the representative of the insurance company stated to Dr. Moore that his company would be responsible for the charges, the legal situation resulting was that Dr. Moore rendered his services on the request of Mr. Camp and was guaranteed payment by the insurer. Since the services were rendered to Camp's horse and following his request, he is liable to the doctor and may recover the amount he is liable for even though he has not yet paid the doctor the amount of his bill. Bianchi v. Mussachi, 1 La.App. 291; Folse v. Flynn, La.App., 200 So. 160.
The record shows that the services rendered by Dr. Moore were well worth the amount charged. The injury was quite serious and the first aid rendered required considerable time and the suturing of a rather large gash in the animal's leg. Daily visits were required for a period of almost 36 days, and, in the absence of any evidence to the contrary, we accept the statement of Dr. Moore that the charges made were customary and usual. We ourselves have had no experience and have no knowledge on the subject.
There is next presented the very interesting question of whether the owner of an injured animal may expend, or become liable for, more than the value of the animal and then seek recovery of the entire amount from the person responsible for the injuries. It is contended, on behalf of defendants, that in no case of a damaged chattel may the claim exceed the intrinsic value of the article before the injury was sustained, and there is, in certain jurisdictions, authority for this view. However, in this jurisdiction and particularly in this court, the contrary doctrine is now well established and we have often held that the liability of the tort-feasor is not limited to the original value of the article damaged. See Bianchi v. Mussachi, supra; Vila v. Westfeldt, 7 La.App. 552; Harrison, Jr. v. Loyocano, 12 La.App. 228, 125 So. 140, and McDonald v. Badie, La.App., 198 So. 545.
In the first-cited case — Bianchi v. Mussachi — where it was shown that the cost of making repairs to a damaged automobile exceeded the original value of the car, we said: "Defendant's obligation was to put back plaintiff's car in the same good running order in which it was prior to the accident. It is his misfortune if this has cost $148.85. The price plaintiff paid for it, is no concern of his. It often occurs that the cost of repairing a car will amount to more than its actual value, and sometimes to more than the price of a new car, on account of the labor of taking the damaged car apart and the cost of the new parts and the labor of assembling them."
In the last-cited case — McDonald v. Badie — it was contended that the $200 claimed as the cost of repairing a damaged piano greatly exceeded the value of the piano, which it was said, was only $100. We held *Page 120 
that, even if that was true, the plaintiff was entitled to the cost of repairing the piano. The Supreme Court apparently approved our conclusion, for in each of these two cases it refused to grant a writ of certiorari and review.
If this principle is sound when applied to the case of an inanimate chattel, it seems even more logical that it should be applied in the case of injury to a dumb animal, particularly where it is obvious that, at the commencement of the treatment of the animal, it was not ascertained that the extensive services would ultimately be required.
While it is true that on the day of the injury the cost of the first treatment was rather substantial, and it is also true that the doctor states that at that time he knew that rather extensive treatment would be necessary, he added that he could not tell at any time that it would take so long as it did take to cure the animal and that the bill would run to the high figure which it finally reached. Who can say that at any particular time in the treatment of the animal the doctor should have desisted and destroyed it? It no doubt appeared to him each day that in a few days recovery would be complete. To have destroyed it at any time under those circumstances would have increased the liability of the defendants, for they would have been liable for the original value of the destroyed animal, plus the costs which would have been incurred up to the time of its destruction.
Then, too, we cannot say that the animal, in this case, was worth only the $100 which, it is admitted, its owner paid for it when he first obtained it. It seems that it had been an unsuccessful race horse — a "thoroughbred", as the evidence shows. No doubt its original owner was disgusted at its not being able to win races and no doubt he, having had an unsuccessful season, was willing to let the animal go for a smaller amount than it was worth. This seems evident from the fact that the present owner, Camp, states that he had been offered $200 for the animal prior to the accident.
For all of these reasons we think that the amount allowed to compensate the doctor should not be reduced and that defendants are liable therefor.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.