LOTTINGER, Judge.
This is a suit for damages resulting when an automobile belonging to plaintiff was run into and damaged by an automobile owned and driven by R. O. LaSalle. Defendant, Hartford Accident and Indemnity Co. is the liability insurer of-LaSalle; La-Salle was not made a party herein. From judgment in favor of plaintiff, defendant brings this suspensive appeal.
The accident occurred at approximately 2:30 a. m. on April 27, 1949, at which time plaintiff’s car was parked, in a legal ■and proper manner, on a street in the City of New Iberia, Louisiana. The clutch on plaintiff’s car was engaged at the time. Plaintiff’s car was struck, from the rear, by LaSalle’s car. The impact caused plaintiff’s car to travel some seventy-five feet to the opposite side of the street, during which travel two sign posts were knocked down. Plaintiff did not discover who had caused the damage until later that morning when LaSalle looked plaintiff up and informed him that he had caused the damage and that he would pay the repair bill on plaintiff’s car. The car, on agreement between plaintiff and LaSalle, was taken to Kramer’s Body Shop for repair. As the frame was found to be bent and Kramer’s Body Shop did not have the equipment to straighten body frames, the car was later towed to Delhomme’s Garage where further work was done to plaintiff’s car.
Upon receiving his car, apparently in good shape after the above mentioned re *260 pairs, plaintiff undertook á trip to Baton Rouge. Upon departing plaintiff noticed a slight engine knock, but thinking it nothing serious, he proceeded onward. Upon reaching Krotz Springs, some 60 miles from New Iberia, the motor completely failed. Plaintiff secured a friend, G. W. Gray, to tow his car back to New Iberia, where it was taken- to Teche 'Cab Company for repairs. They found the skirts on pistons number one and two to be broken. The mechanic attempted to repair the damage, but it was found that the only' remedy would be a new engine, which was installed by the Mayer Motor Company in New Iberia.
Again believing his car to be in good shape, plaintiff undertook a trip to New Orleans. During the said trip, two tires were worn out. This was discovered to be caused by a bent differential housing. Delhomme’s Garage recommended ■ a new housing, as it was very difficult to repair this part on the model car owned (by plaintiff. The part was ordered by Delhomme’s but, as they were hard to get, it had not arrived at the time of trial.
Plaintiff works in the oil fields and travels considerable distances to get to work. At the time of trial he was working south of the City of Houma, Louisiana. He claims, as an element of damages, the sum of $148 which he has been required to expend for travel to and from work. In addition, he claims $250 'as depreciation of his car since the time of the accident. His damages are itemized as follows:
Kramer’s Body and Fender Shop $ 264.59
Delhomme’s Garage. 79.05
Teche Cab, Inc. . 47.99
G. W. Gray (towing). 5.00
Mayer Motpr Company... 404.83
Western Auto Associate Store (two tires) . 34.59
Delhpmmes Garage (estimate for new. housing) . 55.00
G. D. Rainey (travel). 148.00
Depreciation on car. 250.00
Total . $1289.05
'The claim for repairs by Kramer’s Body and Fender Shop has been settled since commencement of this action. .The lower court refused to allow the claim for de: predation as plaintiff has received a new engine, new differential housing and other new parts as a result of the accident, and there was no evidence to indicate- that the car will not be as good after the repairs as it was before. The lower court, therefore, gave judgment in favor of plaintiff in the sum of Seven Hundred Seventy-four and 46/100 ($774.46) Dollars. The defendant has brought this appeal.
The defendant has not denied its liability to plaintiff. The sole question to be determined is the quantum of damages. Defendant charges error in the decision of the lower court as follows:
(a). In finding, without factual proof, that plaintiff’s damage to motor and the damage to the differential housing was a result of the accident.
(b). In holding defendant responsible for certain damages aggravated by plaintiff’s own fault.
(c). In holding defendant responsible for certain damages amounting to more than twice the value of plaintiff’s automobile.
(d). In allowing plaintiff recovery for cost of alternate transportation.
The first of said errors charged is based entirely on a factual issue. We believe that the damages to the motor and differential housing was a result of the accident, as is clearly shown by the evidence. The impact to plaintiff’s car was great. Several qualified and active mechanics were introduced by plaintiff, all of whom were of the opinion that said damages were probably caused by the great impact caused by LaSalle’s car striking plaintiff’s car. Although the resulting damages to the motor and differential housing were not immediately evident, they were, nonetheless, present and became evident upon the subsequent use of the car. A new motor had been installed in plaintiff’s car only a few months prior to the accident. The evidence shows that the car was in perfect shape shortly prior to the accident. To overcome this evidence, defendant introduced an elderly man who had done some mechani *261 cal work. His testimony indicated that he was not then active in said work, and that it had been some years since he had worked on a Hudson engine. The preponderance of the evidence clearly shows that the cylinder skirts were cracked by the impact of the accident and that the subsequent running of the car caused same to break. The said cracks could not have been ascertained without a complete check of every pa.rt of the motor. The facts that plaintiff’s car was in apparently good repair shortly prior to the accident and that the damages became noticeable so shortly afterward leads us to the conclusion that the said damages were a direct result of the accident.
Defendant next contends that the damages were aggravated by plaintiff. In support of this contention, defendant cites Interurban Transportation Co. v. J. Strauss & Sons, La.App., 196 So. 367, 370; Bertuccini v. Toye Bros. Yellow Cab Co., La.App., 11 So.2d 247; and Adam v. English, La.App., 21 So.2d 633, holding that it is incumbent upon one seeking damages to his automobile to take reasonable steps to minimize his loss as much as possible, and his failure to so do renders him responsible for the loss caused by his neglect.
In each of the cited cases, the evidence of damages was immediately apparent, and the plaintiffs totally ignored the damage thus aggravating them. In the Interurban Transportation Case the court said: “The driver knew the bus was damaged and only made a cursory examination of it. He telephoned from the Pine Bar to his company’s headquarters and requested that a relief bus be sent out. He should not have driven the damaged bus until a thorough examination had been made of it. After talking to headquarters, the driver drove the bus on to Olla. . It was hard to steer and became very hot. The driver testified to these facts. When he examined the motor immediately after the accident, he saw that fluid was dripping onto the ground from the motor. When it began to get hot he should have known the cause and stopped driving the bus. It was his duty to minimize the damages as much as possible and when he saw the bus in the condition it was, he failed to minimize the damage, but caused greater damage than had been caused by the collision. The collision did not cause the damage to the motor. It was operating the bus after the collision which caused the damage and defendant is not liable for this item.”
Such was not the case in the instant suit. The evidence shows that the damage to the car was caused by the impact of the accident. The damage to the cylinder skirts and differential housing did not become apparent until subsequent use of the car. Plaintiff took reasonable precaution to have the car repaired. As a matter of fact, repair work had been done by two garages before the damage to the cylinder skirts appeared. The contention by defendant that -minute inspection of every part of the car should have been made is unthinkable. Such would involve an almost complete disassembly of the car, and the charges therefor would be prohibitive. Furthermore, there is no evidence to indicate that damage was caused by the subsequent running of the car. True, the damage did not become noticeable until then, but nevertheless, the damage had already been done. As plaintiff immediately placed his car into the garage for repair we are of the opinion that he fulfilled his responsibility not tci aggravate the damage. He took all reasonable precautions to minimize the damage and should not be held liable for his failure to take excessive precautions.
 Defendant next contends that where damage to a vehicle is such that undertaking its repair would be economically futile and unwise, the measure of damages must be the value of the automobile, at the time of the accident. Such has been held in many cases, some of which have been cited by defendant. However, such is not a hard and fast rule. The circumstances of each case must be considered in determining whether or not to apply the rule. Had the total damages to plaintiff’s car been apparent immediately after the accident we would not hesitate to apply the said rule, and we believe that said rule would have been applied by the lower court. However, here the only immediately ap *262 parent dámages to plaintiff’s car was in the sum of $343.64, which sum represents the repairs by Kramer’s Body Shop and Del-homme’s Garage. Such amount is well below the sum of about $450 which was the value of plaintiff’s car prior to- the accident as set by one of defendant’s witnesses. Had the additional damages, which did not appear until later, been known by plaintiff immediately after the accident, we believe he would have junked the car rather than undertake such repairs. Plaintiff showed the utmost good faith throughout the difficulties. As each item of damage became apparent -he immediately turned his car over to a garage for repairs.
In Bianchi v. Mussachi, 1 La.App. 291, the court said : “Defendant’s obligation was to put back plaintiff’s car in the same good running order in which it was prior to the accident. It is his misfortune if this has cost $148.45. The price plaintiff paid for it, is no concern of his. It often occurs that the cost of repairing a car will amount to more than its actual value, and sometimes to more than the price of a new car, on account of the labor of taking the damaged car apart and the cost of the new parts and the labor of assembling them.” See also; McDonald v. Badie, La.App., 198 So. 545, Camp v. National Casualty Co., La.App., 1 So.2d 118, Vila v. Westfeldt, 7 La.App. 552.
The lower court, in comment on this point, said:
“It would be indeed an injustice if we did not allow the plaintiff the actual damages he suffered by virtue of this accident. He did no more to expose himself to these damages than to park his automobile in a proper place on a public street. He had no connection whatsoever with the forces that wrecked it.”
“He (plaintiff) has applied to the law for redress and the least the courts can do is to reinstate him as closely as possible to the position he enjoyed on April 27, 1949. To do so we must allow him all the repairs on his car made necessary -by the collision. It was not his fault, nor anyone’s fault that the actual cost of repair exceeds the value of his car, and that this fact was not forseeable before the repairs were begun.”
We therefore, hold that, inasmuch as the amount of damages and costs of repair to plaintiff’s car were not apparent before the repairs were commenced, the defendant is liable for the total damages sustained by plaintiff, and that the lower court did not err in so holding.
The last charge of error was the allowance by the lower court of the sum of $148 for expenses incurred by plaintiff in travelling to and from work during the time that his car was undergoing repairs. On this score, the lower court said: “It. may be that the claim of plaintiff for transportation to and from -his work paid to G. D. Rainey is subject to some dimunition. This is so because the claim is for the entire cost of plaintiff’s transportation. Had he used his car he would have incurred some expense as he states that the wear and tear thereon was his only expense when he used it. There is no evidence on how much this wear and tear would amount to. Under the circumstances we can not estimate it and must therefore allow the entire amount of $148.00.”
 We concur with the lower court in its appraisal of the question of travel costs. The evidence disclosed that plaintiff was required to pay the sum of $148 for travel. Although plaintiff, in his petition, asked for future transportation costs, for an undetermined period until the differential housing has been installed, such claim has been abandoned on this appeal. The question raised by defendant that an allowance should be made to the claim because plaintiff’s car does not depreciate while it is not being used, has no merit. In many cases the non-use of a car will depreciate it more rapidly than the daily use of same. As plaintiff has paid the sum of $148 for travel expenses, which sum was reasonable because of the distances involved, he is entitled to recover said amount.
For the reasons assigned, the judgment of the lower court is affirmed, the costs of this appeal to be paid by defendant.
Judgment affirmed.